4th and final case 23-1156 Dominion Coal Corporation v. DOWCP. Ms. Barger or Parker? Ms. Barger. Whenever you're ready. Thank you, your honor. May it please the court, your honors. My name is Charity Barger. I represent Dominion Coal Corporation in this federal backlog appeal. Your honors, this appeal involves an important question regarding the powers of review the benefits review board is afforded, whether the board exceeded its authority by examining evidence independently, whether it exceeded its authority by making credibility determinations in place of the ALJ. And these issues are very significant in federal backlog claims, your honor, because employers and claimants take a lot of time and effort in developing medical evidence in order to inform the ALJs as to the medical issues before them. And then it seems like the board here kind of swept in and took over. The board found as a matter of law in this case that the employer's experts could not even be, their opinions could not even be considered in rebutting clinical pneumoconiosis or total disability, which basically turned a 15-year presumption that's rebuttable into an irrebuttable presumption. So, your honor, we have a few things that we would, key issues that I would like to discuss today. The first being on this issue of clinical pneumoconiosis. Now, the board overturned ALJ Applewhite's opinion here because. The ALJ denied benefit. Yes, your honor. And the board reversed. Yes, your honor. And you're appealing the decision of the board. Correct, your honor. Correct? Correct, your honor. That doesn't happen very often. It doesn't happen very often, your honor. We have a lot of these cases, but they're usually coming up different directions. They definitely, they usually are, your honor. The district director even denied this appeal. So it's been denied all the way up until the point that it got to the benefits review board. And then it was reversed and not remanded, but awarded. This is a coal miner down in western Virginia. It's in Virginia. Yes, a coal miner in Virginia. I'm sorry. Go ahead. I would say, is that down around Grundy? Yes. He's got a lawyer over in Grundy. I'm a lawyer from Grundy. And I think he says he worked in the mine for 21 and a half years. Yes, yes, this claim, yes. He's an underground miner. Correct. Dusty mines. Correct. Is that in the Pocahontas seam? You know what coal was in? Do I know? I'm sorry. I said the Pocahontas seam. The Pocahontas seam. I'm not sure if he worked in the Pocahontas seam. Okay. Underground. Correct. Shuttle operator in a dusty coal mine. Correct, your honor. Yes. And if you worked 15 years, it's presumed you got pneumoconios. Yes. And you all claim he doesn't have. Correct, your honor. Correct. And just, go ahead. And that's low coal, too. I think, wasn't that in his record? It was low coal. I'm not sure, your honor. I think Mr. Austin would know better than I would. 36 inches. But yes. Your honor, just to clarify real quickly, the claimant did allege 21 years, but the Department of Labor found 18 years of coal mine employment. We did not. He said 21 years. Right. That's what he alleged. Somebody else came up with 18 years. Correct, your honor. Yes. Yes. And we did not, we did not appeal the finding of 18 years or that the 15-year presumption was invoked. However, your honors, on pneumoconiosis, the. So we frequently have before us these cases of multiple causation. Correct. And it's sort of, it's sort of hard to, obviously the 40-year smoking habit contributed to the impaired lungs. But also the 18 years or more of underground coal mining would have contributed to pneumoconiosis. And doesn't the statute say the act requires that no part of the respiratory disability was caused by pneumoconiosis. So if you have a situation where there appeared, appear to be two substantial causes, one the smoking and two the underground coal mining employment, both for extended periods of time, doesn't the act require, by virtue of the interim presumption and its language, the act of the language, that the benefits be awarded to the minor in that kind of situation because the act uses the words in part. And how could the 18 years of underground coal mining not have caused pneumoconiosis in part? Well, your honor, I think that one of the biggest issues in this case is that the ALJ never spoke to total disability causation. She didn't even arrive at that question. So what you're referring to is that there's two prongs in rebuttal. One is that the employer can show that the claimant does not have pneumoconiosis arising from coal mine employment. Or two, that they can prove that no part of the coal mining employment, no part of the disability was caused by pneumoconiosis. The ALJ did not even address the second prong. Yet the board stated that there was no reason to allow the ALJ to address that prong because by a matter, because of Toler and Hobit, that as a matter of law, that they're, that they could not rebut this. How long has this litigation been going on? He filed his claim, I believe, in 2019. He filed it when? In 2019. Five years ago. Yes, yes. 2019, I believe, is when he filed his claim. And this was his first claim. So it's been going on for five years. And it's been denied the entire time. I mean, the biggest issue, Your Honor, is that, for us, is that pneumoconiosis was something that was really not something that could be established. But I mean, at some point, isn't it beneficial to have these cases come to rest? Yes, Your Honor. I mean, have someone waiting for five years or someone's spouse waiting for five years to find out if they had benefits? I mean, just practically speaking, I'm no expert in this, in this field the way you are. But five years seems to me just a pretty long wait. Usually, Your Honor, a lot of these claimants die before they get them resolved. Right. The beneficiary is the widow. Do we know what the status of that is here? Whether he's still alive? He's still alive. Yes, yes, he is still alive. What you have stated earlier... What we want to avoid is having these cases bounce up and down and up and down and up and down. You know, there's this feeling about the second coming should be the last. But Judge King is right. There are a lot of people that are entitled to benefits and they pass on before they ever get them. The spouse is entitled, I recognize. But I think one of the things the Court of Appeals does is we can step back and give, get a bird's eye view of the case. We may not know every little x-ray and which way it cuts and all of that. And I'm not an expert in all of the finer points of the interim presumption. And I grant you that. But a Court of Appeals can apply an overall perspective. And if it to some degree, if we step back from the experts, that's not a bad thing. And I'll tell you what my overall perspective is. And that is that this man worked 18 years at least in an underground coal work. And the interim presumption sets in at 15. So this is three years past at least the interim presumption. And notwithstanding that, he's been waiting five years to find out whether or not he's entitled to what seems a pretty good claim. And yes, you know, I tell you another observation I would have. And that is the 40-year smoking habits bound to have caused damage, lung damage in part too. But you know, back then in that day and time, people sometimes turn to smoking. And they do so because sometimes it's just because they're bored. Because they have time on their hands. Because other people are smoking. Or because they want to relax from the stress. It's not good in any way, in any sense. But on the other hand, there must be limits to which it's hard to break that kind of an addiction. And there must be limits to the degree that we can hold that particular habit against the man when he's been underground in the coal mines for as many years as he has. And that's, you know, I'm not, any one of those experts, any one of those experts, these x-ray experts, any one of these doctors could run rings around me in this case. They could. The x-rays seem to be in equipoise and everything, but we could debate that. But I'm just, I'm just telling you what my step one, step back perspective is. You see what I'm saying? Yes, I do, Your Honor. And I understand what you're saying. The issue that we have in this case is that the ALJ did not make any of these determinations. The board did. And that was really not the board's standard of review here. The board was to look at the evidence, and if they had decided that ALJ Applewhite did not do her job in reviewing the evidence or decided something outside of the evidentiary limits, then this should have been remanded so that the ALJ could determine. But instead, the board stepped into the place of the ALJ. This is what we would call a summary reversal by the Court of Appeals, and we do that sometimes. Yes, okay. I mean, that's what they did here. They cited several times, I think, that Collins case that came from this court, right? Yes, yes. It was a summary reversal by the, a unanimous reversal by the board. The three administrative law judges, the Benefits Review Board, the U.S. Department of Labor, and they're the ones that are commissioned to be the experts in this stuff. Yes. You have a right of appeal from them, but all three signed the thing, and then you petitioned for reconsideration, and they reconsidered it and rejected the reconsideration motion. Right, Your Honor. I see that I'm out of time, so. You can answer. Okay. No, I understand. That's the procedure that we have it here. Yes, I understand, Your Honor. There are much more experts in this area than any of us can ever be. I mean, they do this all the time. I mean, I was around coal miners, practicing law, and other things in my experience, coal companies, and I've represented some of both sides. And I've been in coal mines. And I'll tell you what, you get bad dreams just going in and out of one of them. Right. But I admire your work, and what Mr. Fuller's lawyer is doing here. I mean, the coal companies fight hard against these things. Right. And they've got good lawyers and good experts. Most of these miners don't have anything. No, and I understand that, Your Honor. And can I ask, are you saying that the board in this case could never do what it did in any case, or just they couldn't do it in this case? In this case, Your Honor. Why is that? Well, there's a couple of reasons, Your Honor. The first reason is, under clinical pneumoconiosis, the board noted that the ALJ erred in not reviewing all of the medical evidence in determining clinical pneumoconiosis. But then said that our experts, that their opinions could not be reviewed, because they were mere restatements of the chest x-ray evidence. And that's simply not true, for one. For two, the board precedent they relied on to say that this was a matter of law, that they couldn't be reviewed, was a prior board precedent that didn't stand for that proposition at all. The proposition in Anderson v. Valley Camp, the board had stated that an x-ray report in and of itself is not a medical opinion, and that's why it cannot be reviewed. ALJ, sorry, Dr. Sfino and McSherry both offered medical opinions. They weren't x-ray reports. They were medical opinions. So they should have been reviewed in determining clinical pneumoconiosis. And that was just on the clinical pneumoconiosis, that they should not have ruled as a matter of law that the evidence could not be reviewed. Well, and this is related to Judge Wilkinson's point. If you've got the presumption that the minor benefits from, and correct me if I'm wrong, but if the board were to say the expert evidence is an equipoise, we can't say one way or the other, the minor should win, right, in that case? Not the chest x-ray. Well, the issue, and this is part of the issue, is clinical pneumoconiosis, it's clinical pneumoconiosis arising from coal mine employment. So the x-ray evidence only shows the presence of clinical pneumoconiosis. Then we have to determine whether or not it arose from... Right. But if the expert evidence in that is inconclusive, then... But it wasn't inconclusive. Okay. That's your argument. That's our argument, is that it was not inconclusive. And that evidence wasn't considered by the AOB. Correct. And that's just one of the examples. But I know I'm way out of time, so I'll pass the time. Mr. Austin. Thank you, Your Honors, and good afternoon now. Happy to be here today. I'm Brad Austin. I represent the coal miner in this case, Mr. John Fuller. I was going to say a lot of things about kind of the background of this case, but I heard just now that I think the court has a pretty good understanding of the background, the fact that the 15-year presumption is clearly applicable in this case. And I want to talk about two things that Your Honor said just a moment ago. Judge Wilkinson, you said one of the goals here is to not have these cases bounce up and down. And you talked about time. When a case does bounce up and down, time becomes a huge issue. And I think, Judge King, you said one thing was that we don't typically see cases in this manner where the ALJ denied and the BRB reversed. I think if you put those two things together, you'll see that the board recognized that this is not a run-of-the-mill case where they're actually going in and reviewing factual findings. What the board did was the board said we can find from the ALJ's decision what the ALJ did factually, but what the ALJ did wrong was the ALJ misapplied the law. And a review in court does just that. When a review in court... Right, but then that would suggest a remand, right? Not a decision on the merits by the board. No, Your Honor. That's not what I'm saying. What I'm saying is the Benefits Review Board said we can tell that the ALJ found the chest to the facts of this case. The burden was put on claimant by the ALJ. And therefore, the ALJ found that the employer rebutted the presumption, which was completely wrong. No, I agree with you, but the other side is saying that the evidence is not an equipoise and that ALJ never really grappled with that. So what's your response to that? Well, I just, I mean, I think the record doesn't show that because you've got four chest x-rays, you've got ten interpretations of those four chest x-rays. One of them was clearly over the limit and as a matter of law had to be excluded. And in fact, the employer didn't even argue on that one. But the ALJ did go into a detailed analysis of each and every chest x-ray and also the qualifications of the experts. There were... When you say that, I mean, wasn't he or she, I don't know if it was he or she, just counting noses? You know, I've got this many on one side, this many on the other side, and that's it? So, of course, that's employer's argument is that they were just counting noses. But what the ALJ actually did was the ALJ listed these experts and said, most of these experts, except for one, Dr. Forhan, were board certified in radiology and NIOSH certified B-readers, which is like an additional specific type of test. So the ALJ said, on paper, we've got all these radiologists and B-readers and they're equally qualified. So it is a reasonable approach after that, when you have completely conflicting battle of the experts, chest x-ray interpretations, to say there's an equal number on one side and an equal number on the other side. The evidence as a whole is an equipose. And in fact, that's exactly what the ALJ did. She engaged in an analysis of all three chest x-rays in this case. And the reviewing court, the Benefits Review Board, could ascertain what the ALJ did, why the ALJ did it, how the ALJ was going to weigh the conflicting reports. But the problem with the ALJ's opinion was that the ALJ misapplied the burden of proof. So when a reviewing court reviews questions of law, they review questions of law de novo. But when a reviewing court reviews questions of fact, the reviewing court assigns an analysis of substantial evidence. So the Benefits Review Board here recognized, and like you said, Judge King, this is not typical of what we see. But Judge Wilkinson, as you said, the board said there's no need to remand this case. We know what the ALJ did, why she did it, how she reviewed the chest x-rays. And applying the correct legal standard, the employer did not rebut the presumption of clinical pneumoconiosis. And then we've got a host of cases, cases like Toller, Scott, Epling, which says if a physician does not opine that a minor has black lung disease, then the physician's opinion with regard to disability of the disease, we call it disability causation, is going to have a hard time being credited, right? Because the predicate of actually finding the disease present, which is erroneous under the facts of this case, because it was clearly proven here that the employer did not rebut pneumoconiosis, is going to make disability causation also flawed. So as a matter of law, the Benefits Review Board did not go in and reweigh evidence. The Benefits Review Board went in and applied the correct law. So that's what we have here before us, Your Honor. And of course, you know, the employer is arguing under this case that the board overstepped. But this court has frequently changed decisions from lower courts when only one conclusion could be reached. I can think of a few different examples. Cases like Adams v. Director, Scott v. Mason, Dayhue v. Ballard, which the employer cites in its brief, but it went the other way, West Virginia CWP Fund v. Bell. I mean, this is something that a reviewing court can certainly do. It has the ability to do this when there's a legal question and when there's only one result that could be reached. So, Your Honors, I know I've got a lot of time left, but this is a big case. There's a lot to it. There's 700, maybe 800 pages in the joint appendix, and there's a lot of citations. But at the end of the day, I think it's important that we keep separate factual findings made by the ALJ and legal de novo review of the Benefits Review Board. Because the board did not engage in factual findings, the board engaged in correctly applying the law, which was what the ALJ did not do. And when the board correctly applied the law under the 15-year presumptions legal standard, the result is that claimant is entitled to benefits. Now, it's a little confusing at page 11 of the ALJ's decision. He says, and this is clearly wrong, the board found as much. But he says, the overall x-ray evidence does not support a finding of pneumoconiosis. Accordingly, I find that the employer has demonstrated that the claimant does not suffer from clinical pneumoconiosis. Doesn't that suggest that he found the employer's evidence more persuasive than the employee's evidence? Not when you read the paragraphs above that, where the ALJ engaged in an individual analysis of each chest x-ray, and also critically, not when you take out the only chest x-ray that was found to be negative, which had a legal error involved in it. Which is what? Which was Dr. Fino's. What's the error? The legal error is that the ALJ considered a chest x-ray reading of the April 17, 2019, chest x-ray from Dr. Fino. That chest x-ray was not an employer's evidence summary form, which it's required to do before it goes to the hearing. And it was not even discussed or argued in employer's brief. An employer has since conceded that that really did not need to be in the record. Because that didn't serve as affirmative evidence. It didn't serve as rebuttal evidence. And it had no place to fit into the evidentiary scheme under 20 CFR 725.414. So it was clear legal error for the ALJ to admit that, not necessarily admit it, but consider it. OK. So where does that leave the expert evidence, in your view? So that leaves the expert evidence in complete equipose on that chest x-ray. And we know that because the ALJ specifically said, where there are board certified radiologists and NIOSH certified B readers who conflict, that chest x-ray is in equipose. And in that case, we have three total readings. One from Dr. Ramakrishnan, who found the chest x-ray positive. One from Dr. Adcock, who found the chest x-ray negative. And then a third one from Dr. Fino, who found it negative. But see, Judge, that one was clear error. And that's the only chest x-ray out of the four that the ALJ found to be negative. The ALJ found two of the four to be in equipose, found one of the four to be positive, and found one of the four to be negative. So you've got two equipose. Take out the negative. It becomes equipose. And one positive. So at best for the employer, we're looking at equipose. You see what I'm saying? There's no other solution that the ALJ could have reached. And the fact that the ALJ made that legal error in considering evidence over the limit, and the fact that the ALJ misapplied the burden of proof, allowed the Benefits Review Board to say, we know what the ALJ did, but she clearly misapplied the law. And because we're the Benefits Review Board and we review legal findings de novo, this is something that we can address. The Benefits Review Board did not reweigh the evidence. The Benefits Review Board got the evidence correct under the legal standard that the ALJ should have applied. All right. Thank you. Thank you, Your Honor. We would just ask that the court affirm the decision and order of the Benefits Review Board, which reversed the Administrative Law Judge's decision and order denying benefits. Thank you for your time, Your Honor. Thank you. Ms. Barger, can you tell me what was wrong with that last analysis of the evidence? What was wrong with the last analysis of the evidence? With the expert, his sort of counting of... I think that when the board counted, it was actually positive for pneumoconiosis. Once you take out Dr. Fino's chest x-ray evidence, the board found that it would actually be positive for clinical pneumoconiosis. But... Where is that? Where is that in the record? I'm sorry? Where is that in the record that the board found that it would be positive? It's in their decision. Because the way that... The way that I... Are you talking about on page six? I don't have the joint appendix for me, but... I mean, I'm talking about the... The board's decision. The board decision, yeah. Yes. But, Your Honors, no matter how the chest x-ray evidence comes out, whether it's at equal pose, whether it's negative, well, negative is better, but whether it's positive, the issue still is there. How do we find that it arose from coal workers' pneumoconiosis? How do we find that it arose from coal mine employments? Here you have a situation in which the experts are going every which way. Right. You've got the experts really almost in a state of equipoise. It's almost a tie game. Right. Given that, why wouldn't the interim presumption in a situation where the evidence is pretty evenly divided, why wouldn't the interim presumption belong with the miner? Why wouldn't the benefits for the miner be the tiebreaker that... Congress passed this program with a purpose, and the purpose that Congress passed this program was to award substantial, to award benefits to people who had spent substantial time in the mines. And if the evidence is all against somebody, or they haven't spent that much time, or the experts line up one way, or whatever, then, you know, there's no recovery. But in a case that's as close as this one was, doesn't Congress's purpose matter? Which was to compensate these folks that have spent substantial time in the mines and have damaged their lungs pretty severely as a result. I mean, pneumoconiosis is a mean disease. And it's the same thing with emphysema. There is nothing more agonizing than having perennial shortness of breath, which oxygen relieves only intermittently. It is a miserable thing. And Congress wanted the miners, in this case, to at least have some recompense and some compensation. That doesn't mean that there's a recovery in every case. But why wouldn't it mean, after a five-year wait, and the evidence is in equipoise, and you've got the experts and the readers going this way and that, why wouldn't the interim presumption make the tiebreaker in favor of the miner? And why wouldn't the congressional purpose lead us there? I'm out of time, but can I answer your question? Sure. The issue that I'm seeing, Your Honor, is that we're turning a rebuttable presumption into an irrebuttable presumption. Employers are supposed to be allowed to rebut these presumptions. What we have here and what we've been talking about is just the chest X-ray evidence. That's all we've been talking about. The medical opinions are not being used at all. Dr. McSherry stated specifically that he acknowledged that there may be low-perfusion clinical pneumoconiosis in this case. However, that a purely obstructive hyperinflation and a negative X-ray or a low-perfusion chest X-ray, it's not indicative of co-workers' pneumoconiosis. And then the ALJ found on legal pneumoconiosis that the evidence did not support that there's a chronic lung disease that it was a rise from coal dust. We're all statements that the ALJ made, but the board kind of brushed aside so that they could use the 15-year presumption to award this case. And I understand what Congress was trying to do was to make it easier for the minors. But when you look back and you take a step back and look at the evidence, Dr. Forehand, the Department of Labor expert found no total disability. So we have no total disability from the only other expert. The other two experts are finding no pneumoconiosis. And if there is pneumoconiosis, it's not caused by coal dust exposure. And so we're ignoring all the evidence based on just the chest X-ray evidence so that we can use the 15-year presumption. And that makes it an irrebuttable presumption, Your Honor. And it's supposed to be able to be rebutted. And that's our claim, Your Honor. I know I'm out of time. But unless you have any other questions, we ask that this court reverse the board's decision and remand for further consideration. All right. Thank you. Thank you, Your Honors. We'll come down and recounsel and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert B. King